1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9    JAMES CLARK VERMILLION,                1:09-CV-01392 OWW GSA HC

10                    Petitioner,           FINDINGS AND RECOMMENDATION
                                            REGARDING PETITION FOR WRIT OF
11       v.                                 HABEAS CORPUS

12
     J. D. HARTLEY, Warden, et al.,
13
                      Respondents.
14   _____/

15
         Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus
16
     pursuant to 28 U.S.C. § 2254.
17
                           **PROCEDURAL BACKGROUND**
18
         Petitioner is currently in the custody of the California Department of Corrections and
19
     Rehabilitation serving an indeterminate sentence of fifteen years to life for his 1995 conviction in
20
     Kern County Superior Court for second degree murder. (LD[1] 7.)
21
         On April 5, 2007, Petitioner's first parole suitability hearing was held before the
22
     California Board of Parole Hearings ("Board") to determine his eligibility for parole. (HT[2] at 1.)
23
     Petitioner attended the hearing and was represented by an attorney. (HT at 1.) At the conclusion
24
     of the hearing, the Board denied parole and deferred rehearing for three years. (HT at 77.)
25
         Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court.
26

27
     [1]"LD" refers to the documents lodged by Respondent with his answer.
28
     [2]"HT" refers to the hearing transcript that is contained in Exhibit 1 of Respondent's Answer.

1

1  (LD 1.)  On December 7, 2007, the petition was denied in a reasoned decision. (LD 2.)  Petitioner

2  then filed a habeas petition in the California Court of Appeals, Fifth Appellate District. (LD 3.)

3  The petition was denied on January 15, 2009, with citation to In re Lawrence, 44 Cal.4th 1181

4  (2008). (LD 4.) Petitioner then filed a petition for writ of habeas corpus in the California

5  Supreme Court. (LD 5.) On July 29, 2009, the petition was denied. (LD 6.)

6        On August 10, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

7  The petition challenges the 2007 decision of the Board of Parole Hearings denying parole. On

8  October 26, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to

9  Respondent's answer on December 28, 2009.

10  **FACTUAL BACKGROUND**[3]

11        At approximately 2:30 a.m., on April 8, 1995, Petitioner drove his vehicle southbound in

12  a northbound lane of Interstate 5 and collided with a northbound vehicle driven by Joseph

13  Romero. The impact caused permanent brain damage to Romero and rendered him comatose, and

14  killed Romero's passenger, Mei Po Wong. The evidence showed Petitioner had entered the

15  freeway the wrong way using a nearby freeway onramp.

16        A blood sample drawn from Petitioner almost an hour and a half after the accident

17  measured a blood alcohol concentration of .22 percent.

18  **DISCUSSION**

19  I.   Standard of Review

20        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

21  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

22  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008 (1997); Jeffries

23  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th

24  Cir.1996), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by Lindh v. Murphy,

25  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

26  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

27

28       [3]The information is derived from the factual summary set forth in the decision of the California Court of
Appeal on direct review. (LD 7:3-4.)

1    provisions.

2         Petitioner is in custody of the California Department of Corrections and Rehabilitation

3    pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state

4    court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

5    he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

6    v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

7    Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

8    habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

9    petition is not challenging his underlying state court conviction.'").

10        The instant petition is reviewed under the provisions of the Antiterrorism and Effective

11   Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

12   70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

13   adjudication of the claim "resulted in a decision that was contrary to, or involved an

14   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

15   of the United States" or "resulted in a decision that was based on an unreasonable determination

16   of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

17   § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

18        As a threshold matter, this Court must "first decide what constitutes 'clearly established

19   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

20   *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

21   Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

22   of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

23   words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

24   principles set forth by the Supreme Court at the time the state court renders its decision." Id.

25        Finally, this Court must consider whether the state court's decision was "contrary to, or

26   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

27   72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

28   grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

1   Court on a question of law or if the state court decides a case differently than [the] Court has on a

2   set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

3   at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

4   state court identifies the correct governing legal principle from [the] Court's decisions but

5   unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

6   413.

7       "[A] federal court may not issue the writ simply because the court concludes in its

8   independent judgment that the relevant state court decision applied clearly established federal

9   law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

10   A federal habeas court making the "unreasonable application" inquiry should ask whether the

11   state court's application of clearly established federal law was "objectively unreasonable." Id. at

12   409.   Petitioner has the burden of establishing that the decision of the state court is contrary to

13   or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

14   Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

15   states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

16   state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

17   Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

18       AEDPA requires that we give considerable deference to state court decisions. The state

19   court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

20   interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied,

21   537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

22       In this case, because the California Supreme Court summarily denied the habeas petition,

23   this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501

24   U.S. 797, 804-05 & n.3 (1991).

25   II.   Review of Petition

26       A parole release determination is not subject to all the due process protections of an

27   adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

28   also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

4

1    protections that particular situations demand). "[S]ince the setting of a minimum term is not part

2    of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not

3    constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at

4    1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole

5    board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate

6    must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be

7    afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied

8    parole, the inmate must be told why "he falls short of qualifying for parole." Id.

9         As to these procedural protections, Petitioner was provided with all that is required. He

10   was given advanced written notice of the hearing, an opportunity to submit materials for the

11   Board's consideration, an opportunity to be heard, representation by an attorney, and a written

12   decision explaining the reasons parole was denied.

13        "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not

14   comport with 'the minimum requirements of procedural due process,' unless the findings of the

15   prison disciplinary board are supported by *some evidence* in the record.'  472 U.S. 445, 454

16   (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of

17   Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added).  The "some evidence" standard

18   has been extended to federal review of parole decisions. See Irons v. Carey, 505 F.3d 846, 851

19   (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("[T]he Supreme Court ha[s] clearly established that

20   a parole board's decision deprives a prisoner of due process with respect to this interest if the

21   board's decision is not supported by 'some evidence in the record,' [citations omitted] or is

22   'otherwise arbitrary.'").  In assessing "whether a state parole board's suitability determination

23   was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and

24   regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at

25   851.  Here, the Court must look to California law and review the record.  In reviewing the record

26   and determining whether the "some evidence" standard is met, the Court need not examine the

27   entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  Sass,

28   461 F.3d at 1128.  Petitioner argues that a more stringent "preponderance of the evidence"

standard should be employed; however, there is no authority for application of that standard.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In this case, the superior court found some evidence supported the Board's finding that Petitioner posed an unreasonable risk of danger to the public if released based on the following factors: 1) The nature of the commitment offense; 2) Limited programming; and 3) Psychological report. (HT at 68-77.)

First, the Board determined that Petitioner committed the offense in an especially heinous, atrocious or cruel manner.[4] In support of this finding, the Board noted that multiple victims were involved within the meaning of § 2402(c)(1)(A). Specifically, victim Joseph Romero sustained permanent brain damage and was rendered comatose, and victim Mei Po Wong was killed. In addition, the Board noted that Petitioner had sustained five prior convictions

---

[4] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

for driving under the influence.  The state courts determined that some evidence supported the

Board's finding that Petitioner remained a danger to the public if released in light of the

conviction offense and his multiple prior convictions involving driving under the influence of

alcohol.

Next, the Board determined that Petitioner had only programmed in a limited manner.

The Board stated that Petitioner had received some programming in Alcoholics Anonymous;

however, his participation was spotty. The Board stated that Petitioner required serious and

consistent programming in this area given his multiple convictions and his failures in the past to

deal with his addiction.

Finally, the Board found Petitioner's psychological report to be unsupportive of release.

According to the report prepared by Dr. T. George, Petitioner "appears to lack insight into the

lifelong nature of addiction. Per his self-report, he has had multiple substance abuse treatment

failures, poor performance on supervised release and his consistency, based on records review,

attendance and substance abuse treatment programs while incarcerated." (HT 71-72.) The

psychologist further noted that Petitioner "lacks a realistic appraisal of some of the difficulties he

would likely encounter." (HT 72.) The psychologist determined that Petitioner is "a moderate

risk for violence." (HT 72.) "His apparent lack of understanding into his addiction, as well as his

long history of impulsivity and substance related criminal behavior lessen his ability to actively

make effective decisions regarding his life course." (HT 72.) Pursuant to 15 Cal.Code Regs.

§ 2402(c)(5), the Board determined that Petitioner remained a serious risk of danger to the public

if released.

The parole board also considered several positive factors favoring parole release.

Petitioner appeared genuinely remorseful and took responsibility for his actions. The Board

commended him for having multiple job offers and marketable skills. He also had good family

support and a place to stay if released.  He was commended for his participation in vocational

and self-help programming. He was also lauded for not having sustained a single serious rules

violation. Nevertheless, the Board concluded Petitioner remained an unreasonable risk of danger

to the public in light of the offense, his multiple prior convictions for the same conduct, his

failure to profit from society's previous attempts to correct his behaviors, his limited programming, and his negative psychological report.  The state court finding that some evidence supported this determination was not unreasonable.

Petitioner also takes issue with the three-year postponement of his next parole eligibility hearing. He contends he should have only been denied parole for a period of two years pursuant to Cal. Penal Code § 3041.5(b). However, the state court found a three-year denial was appropriate and in accordance with §§ 3041.5(b)(2)(B), 3041(b). As correctly argued by Respondent, the claim must be rejected because it is not cognizable in this federal habeas action since Petitioner is challenging the state court's interpretation of state law. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).

Additionally, Petitioner claims his sentence is disproportionate to his crime in violation of the Eighth Amendment to the U.S. Constitution. Respondent correctly argues that this claim is untimely and violates the statute of limitations set forth in 28 U.S.C. § 2254(d).  Direct review of the underlying conviction in this case concluded on June 11, 2000, which was forty days after the appellate decision became final on May 2, 2000. (LD 7.) See Cal. R. Ct. 8.366(b)(1), 8.500(e)(1). Petitioner had one year from June 12, 2000, to June 11, 2001, to raise this challenge. He did not do so and waited for over eight years. Thus, the claim is untimely and must be rejected.

Petitioner also claims the parole board violates due process by relying on the unchanging circumstances of his conviction. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation," this is not the situation here. As discussed above, the parole board did not rely solely on the underlying offense. The board also relied on Petitioner's limited and spotty self-help programming in alcohol addiction and his negative psychological review. These additional facts

1  are not immutable and stale. In addition, this is only Petitioner's first suitability hearing.

2  Therefore, the concerns present in <u>Biggs</u> are not at issue here.

3     Petitioner has not shown that the state court resolution of his claims "resulted in a

4  decision that was contrary to, or involved an unreasonable application of, clearly established

5  Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision

6  that was based on an unreasonable determination of the facts in light of the evidence presented in

7  the State Court proceeding." 28 U.S.C. § 2254(d). The petition should be denied.

8  **RECOMMENDATION**

9     Based on the foregoing, it is HEREBY RECOMMENDED that:

10    1.  The petition for writ of habeas corpus be DENIED; and

11    2.  Judgment be entered in favor of Respondent.

12     This Findings and Recommendations is submitted to the assigned United States District

13  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

14  the Local Rules of Practice for the United States District Court, Eastern District of California.

15  Within thirty (30) days after being served with a copy, any party may file written objections with

16  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

17  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

18  and filed within fourteen (14) after service of the objections.  The Court will then review the

19  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

20  failure to file objections within the specified time may waive the right to appeal the District

21  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

23    IT IS SO ORDERED.

24   **Dated:   April 15, 2010**    /s/ **Gary S. Austin**
           UNITED STATES MAGISTRATE JUDGE